UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOUIS A. DiDONNA,

                              Plaintiff,

          -against-

ROBERT MAAS; CONNER STEWART;
DOUGLAS KETCHUM; KYLE FARRAND;
ANTHONY SKOW,

                              Defendants.

---

**OPINION & ORDER**

22-CV-05417 (PMH)

PHILIP M. HALPERN, United States District Judge:

Louis DiDonna ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Robert Maas, Conner Stewart, Douglas Ketchum, Kyle Farrand, and Anthony Skow ("Defendants") in connection with an arrest effectuated on March 15, 2021. (Doc. 11, "Am. Compl.").[1]  Plaintiff asserts claims for excessive force and failure to intervene in violation of the Fourth Amendment. (*Id.*). Pending before the Court are Defendants' motions for summary judgment. (Doc. 106; Doc. 107; Doc. 108; Doc. 109; Doc. 109-1, "Def. Br.").[2] Plaintiff did not file any opposition to the motions; the Court therefore deems the motions unopposed.[3]

---

[1] Citations to specific pages of the Amended Complaint and other filings on the docket correspond to the pagination generated by ECF.

[2] Pursuant to the Court's instructions, Defendants filed one joint set of motion papers with separate notices of motion and one consolidated memorandum of law. (Doc. 99). A notice of motion was filed on behalf of Defendant Stewart (Doc. 106), Defendant Maas (Doc. 107), and Defendant Ketchum (Doc. 108). The Court notes that the notice of motion filed at Doc. 109 does not specifically identify any individual Defendants, but rather moves on behalf of "the above-named defendants." However, Doc. 109 was filed by Mr. Bashjawish who is counsel for Defendants Farrand and Skow. Mr. Bashjawish also specified in the pre-motion conference letter that he was seeking to move for summary judgment on behalf of Defendants Farrand and Skow. (Doc. 83). Accordingly, the Court understands this notice of motion (Doc. 109) to be made on behalf of Defendants Farrand and Skow.

[3] The Court set a briefing schedule for Defendants' motions for summary judgment on April 26, 2024 (Doc. 99) and granted an extension of that schedule on May 17, 2024 (Doc. 104). The docket indicates that copies of the Court's April 26, 2024 and May 17, 2024 Orders were served on Plaintiff. (Docs. 100, 105).

For the reasons set forth below, Defendants' unopposed motions for summary judgment are GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motions for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement (Doc. 109-2, "56.1"),[4] and the Defendants' Joint Declaration (Doc. 109-3, "Joint Decl.") along with the exhibits annexed thereto, which include, *inter alia*: (1) the parties' affidavits and deposition transcripts (*id.*, Exs. A-E, G-H); (2) a copy of New York States's Administrative Investigative Report (*id.*, Ex. F); (3) copies of Plaintiff's medical records (*id.*, Exs. I-L); and (4) a copy of the Sullivan County Sheriff's Office Arrest Report (*id.*, Ex. P).

On March 15, 2021, Plaintiff drove a red Honda Accord to a McDonald's in Monticello, New York (Sullivan County). (56.1 ¶¶ 1, 4; Joint Decl., Ex. A "Pl. Tr." at 28:5-13, 110:17-21,

---

Plaintiff's brief in opposition to Defendants' motions was due August 12, 2024. (Doc. 104). On July 15, 2024, Defendants filed affidavits of service (Docs. 111-115) showing that Plaintiff was served with their motion papers as well as Notice to Pro Se Litigants Pursuant to Local Civil Rule 56.2, which included, *inter alia*, the text of Federal Rule of Civil Procedure 56 and a forewarning that failure to respond may result in the dismissal of the case (Doc. 112). On August 13, 2024, Plaintiff filed a notice of change of address. (Doc. 119). At the direction of the Court, Defendants served copies of their motion papers on Plaintiff at his updated address. (Doc. 123). The Court also *sua sponte* extended Plaintiff's time to file his opposition to September 19, 2024. (Doc. 120). On September 20, 2024, the Court granted Plaintiff's request for an extension of time to file his opposition brief to October 17, 2024. (Docs. 125-126). Plaintiff filed a letter on October 22, 2024, indicating that he had sent his opposition on October 14, 2024, that it had not been filed by the Pro Se Clerk's Office because it was incorrectly formatted, and that he was "going to resend this response today." (Doc. 127). Plaintiff did not file or serve a copy of his opposition thereafter. (Doc. 128). On November 20, 2024, the Court *sua sponte* extended Plaintiff's time to oppose the motion to December 4, 2024, and cautioned that if Plaintiff failed to file opposition by December 4, 2024, the motion would be deemed fully submitted and unopposed. (Doc. 129). The Court's November 20, 2024 Order was mailed to Plaintiff. (*See* Nov. 21, 2024 Doc. Entry). Thus, as is clear from the docket, Plaintiff had ample notice of Defendants' motions for summary judgment, as he had been served with the moving papers and subsequently requested extensions of time to file opposition to the motions. Plaintiff failed to file any opposition and, accordingly, the Court deems the motions fully submitted and unopposed.

[4] Plaintiff did not submit his own Rule 56.1 Statement or respond to Defendants' Rule 56.1 Statement.

156:9-11). A McDonald's employee reported Plaintiff's vehicle to the police, indicating that she noticed a beer bottle in the center console and that she thought the driver might be impaired or under the influence. (56.1 ¶ 2; Joint Decl., Ex. O). Plaintiff departed McDonald's and proceeded to drive along Route 17 when he observed a Sheriff's vehicle activate its emergency lights behind him. (56.1 ¶ 3; Pl. Tr. at 28:13-24, 98:5-21, 159:11-15). Plaintiff did not pull over. (56.1 ¶ 6; Pl. Tr. at 28:13-24). Plaintiff was pursued by several members of law enforcement down Routes 17 and 55 but refused to stop.[5] (56.1 ¶ 7; Pl. Tr. at 159:9-160:9). Plaintiff's evasive driving maneuvers resulted in collisions with multiple police vehicles and his car eventually came to a stop after colliding with Defendant Ketchum's vehicle. (56.1 ¶¶ 12-13, 21, 33-35; Pl. Tr. at 33:14-16, 99:12-100:20, 101:13-19, 160:16-20).

Pursuant to the Arrest Report, Deputy Russell Corley, who is not named as a defendant in this action, was the arresting officer and Defendant Farrand was the assisting officer. (56.1 ¶ 47; Joint Decl., Ex. P). Defendant Farrand testified that he ordered Plaintiff to exit the vehicle and that Plaintiff did not move. (Joint Decl., Ex. E "Farrand Tr." at 43:25-44:3, 67:5-7). Plaintiff was then physically removed from the vehicle. (*Id*. at 44:4-6, 67:8-10, 68:3-11; Pl. Tr. at 102:2-8; Joint Decl., Ex. H "Maas Tr." at 50:18-23). Plaintiff was placed against the car, handcuffed, patted down, and put in a Sheriff's vehicle for transport to the station. (56.1 ¶¶ 46, 48; Farrand Tr. at 68:12-14; Maas Tr. at 51:9-14, 52:21-54:7).

Plaintiff testified that during his arrest he was "slammed" against the Sheriff's vehicle, and that he sustained an injury to his right rib. (Pl. Tr. at 85:17-86:3, 107:4-16). Plaintiff further testified that the handcuffs were put on so tightly that they injured his right wrist. (Pl. Tr. at 30:3-9, 86:5-8). Plaintiff complained to Defendant Maas that the handcuffs were on too tight, and

---

[5] All Defendants were involved to some extent in the pursuit of Plaintiff's vehicle on March 15. The details of each individuals' involvement in the pursuit and/or arrest are addressed *infra*.

Defendant Maas informed Defendants Skow and Ferrand of Plaintiff's complaint. (56.1 ¶¶ 49-50; Mass Tr. at 54:21-55). Defendant Skow readjusted Plaintiff's handcuffs. (Joint Decl., Ex. D "Skow Tr." at 52:3-53:5, 55:8-10). Plaintiff confirmed that one of the officers adjusted his handcuffs but testified that it only made him feel worse. (56.1 ¶ 51; Pl. Tr. at 30:16-21).

Plaintiff was transported to the Sullivan County Sheriff's Department where he was assessed by Emergency Medical Services ("EMS") and advised to go to the hospital, but he refused medical attention or transport to the hospital. (56.1 ¶ 52; Joint Decl., Ex. J at 6, 8, 16, 20; Pl. Tr. at 104:13-105:2). Plaintiff now alleges that he sustained permanent injuries to his right ribs and wrist. (Am. Compl. at 5; 56.1 ¶ 56; Pl. Tr. at 14:9-13). He claims that he suffered permanent feeling loss in 35% of his right hand, and that his right rib was broken, causes him constant pain, and can be seen poking through the skin. (Am. Compl. at 5; 56.1 ¶¶ 57-58, 60).

Plaintiff underwent an x-ray of his right ribs and chest fifteen days after the arrest that concluded that "[t]here is no fracture seen." (Joint Decl., Ex. I). An x-ray conducted on August 22, 2022, also found "no evidence of right rib fracture." (Joint Decl., Ex. K). An electromyography test was conducted on Plaintiff's right wrist on September 1, 2021, which concluded "[t]here is electrophysiological evidence of mild right median neuropathy at the wrist (carpal tunnel syndrome) and old inactive right posterior interosseous neuropathy. There is no evidence of widespread motor neuronopathy; active right cervical radiculopathy or right radial neuropathy." (Joint Decl., Ex. L at 13). Plaintiff's medical records further show that he was referred to a hand surgeon on October 3, 2013 regarding his right hand. (Joint Decl., Ex. K at 6). Plaintiff explained at his deposition that this referral concerned an injury to his right ring finger and that he was told to have it looked at by a hand surgeon, that he would need physical therapy, and that he would

need to have a tendon put back in. (Pl. Tr. at 17:7-18:13, 20:6-21:7). Plaintiff testified that he never took any such steps. (*Id.*).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[6] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

Where, as here, a summary judgment motion is unopposed, "uncontroverted facts in the moving party's statement pursuant to Local Rule 56.1 are deemed admitted." *Johnson v. City of New York*, No. 15-CV-00403, 2016 WL 7335663, at *2 (S.D.N.Y. Dec. 16, 2016) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Fate v. Petranker*, No. 19-CV-05519, 2022 WL 2672317, at *1 (S.D.N.Y. July 8, 2022) ("Statements made by Defendant that are supported by admissible evidence and not refuted by Plaintiff are deemed admitted."). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 242. "Before summary judgment may be entered, the district court must ensure

that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). "And, of course, the court must determine whether the legal theory of the motion is sound." *Id.* A summary judgment motion in a *pro se* case "may be granted as unopposed only if (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Lurch v. Berry*, No. 20-CV-02312, 2021 WL 3668113, at *3 (S.D.N.Y. Aug. 17, 2021).[7]

## **ANALYSIS**

Plaintiff presses claims for excessive force and failure to intervene in the use of excessive force under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

---

[7] The Court must, as an initial matter, find that Plaintiff has received adequate notice that "failure to file any opposition may result in dismissal of the case." *Lurch*, 2021 WL 3668113, at *3. As explained *supra*, Defendants served Plaintiff with the requisite Notice to Pro Se Litigants Pursuant to Local Civil Rule 56.2 that failure to respond to the motion may result in dismissal of the action. (Doc. 112). Accordingly, the Court finds that Plaintiff received adequate notice that his claims might be dismissed for failure to file an opposition to Defendants' motion for summary judgment. *See Gil-Cabrera v. City of New York*, No. 20-CV-09493, 2023 WL 2601132, at *6 (S.D.N.Y. Mar. 22, 2023) (finding adequate notice where the plaintiff was served with a Local Civil Rule 56.2 notice containing a warning "that failure to respond may result in dismissal of the action").

Defendants argue that summary judgment dismissing the action is warranted because: (i) Defendants were not personally involved in Plaintiff's arrest; (ii) the uses of force were reasonable as a matter of law; and (iii) Defendants are entitled to qualified immunity. (Def. Br. at 6-24).

## I.    Personal Involvement

"As a fundamental prerequisite, 'to establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *4 (S.D.N.Y. Mar. 22, 2021) (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017)). To show personal involvement, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact." *Keesh v. Quick*, No. 19-CV-08942, 2022 WL 2160127, at *5 (S.D.N.Y. June 15, 2022). "A police officer is personally involved in the use of excessive force if he used force himself or was present when force was used by another officer but did not intervene to protect the victim even though he had a reasonable opportunity to do so." *Jean-Baptiste v. Froehlich*, No. 21-CV-01482, 2024 WL 4581653, at *5 (D. Conn. Oct. 25, 2024) (citing *Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (summary order)). Here, Plaintiff was unable to identify which officers handcuffed him or "slammed" him against the vehicle. (56.1 ¶ 17; Pl. Tr. at 107:22-108:10, 143:1-17, 179:23-180:4). Defendants contend that none of them were personally involved in the alleged constitutional violations. (Def. Br. at 6-13).

Turning first to Defendant Stewart (Def. Br. at 7-9), Plaintiff testified that he believed, based on a police report, that Defendant Stewart "assisted . . . taking [Plaintiff] into custody." (56.1¶ 18; Pl. Tr. at 102:17-20, 103:8-104). The record shows that Defendant Stewart was involved

in the police pursuit, that his vehicle was struck by Plaintiff's vehicle, that Plaintiff's vehicle stopped "at least two car lengths-ish away from [him]," and that he was waiting by his car for his supervisor when the arrest occurred. (56.1¶¶ 9-14; Joint Decl., Ex. B "Stewart Tr." at 38:4-9, 39:16-40:8, 41:23-25, 43:14-21). Defendant Stewart testified that he did not remove Plaintiff from his vehicle, handcuff Plaintiff, or have any interaction with Plaintiff during the arrest. (56.1 ¶ 15; Stewart Tr. at 43:11-21, 44:14-45:5). Defendant Stewart did not see Plaintiff exit the vehicle, be "slammed" against the car, or be placed in handcuffs. (56.1¶ 16; Stewart Tr. at 44:14-45:5). Thus, the record shows that Defendant Stewart was not involved in the allegedly excessive uses of force nor present when such force was used.

With respect to Defendant Ketchum (Def. Br. at 9-11), Plaintiff testified that he believed Defendant Ketchum "slammed" him against the car. (Pl. Tr. at 121:12-122:11). The record shows that Defendant Ketchum was involved in the police pursuit, that his car collided with Plaintiff's vehicle, and that Plaintiff's vehicle came to a rest on the opposite side of the road following their collision. (56.1 ¶¶ 30-35). Defendant Ketchum testified that he assisted a deputy in moving a vehicle and that "[b]y the time I had backed his car up and got it in position, they had [Plaintiff] out of the car" and had already patted Plaintiff down and handcuffed him. (56.1 ¶¶ 38-41; Joint Decl., Ex. C "Ketchum Tr." at 72:16-23). Defendant Ketchum neither observed Plaintiff exit his vehicle nor saw Plaintiff be put against the vehicle. (56.1 ¶¶ 42-43; Ketchum Tr. at 77:12-14, 82:4-18). Defendant Ketchum was, accordingly, not involved nor present when the subject uses of force occurred.

On the other hand, the record shows that Defendants Maas, Farrand, and Skow were present during Plaintiff's arrest. Defendant Farrand testified that he stood to the side while Defendant Maas "handl[ed]" Plaintiff. (Farrand Tr. at 61:2-6, 67:5-7, 68:17-22). Defendant Maas testified

that he recalls being there, although he states that he was not the one to handcuff Plaintiff. (Maas Tr. at 50:2-23, 54:11-17). Defendant Maas heard Plaintiff's complaint about the handcuffs being too tight, reported the complaint, and then Defendant Skow readjusted Plaintiff's handcuffs (Maas Tr. at 54:22-55:3; Skow Tr. at 52:3-25, 55:8-10). Therefore, summary judgment is not warranted as to Defendants Maas, Farrand and Skow on the basis of lack of personal involvement because the record shows that they were at least present for, and potentially participated in, Plaintiff's being put against the car and handcuffing.[8] *See Gardner v. City of New York*, No. 16-CV-06476, 2021 WL 3848112, at *7 (E.D.N.Y. Aug. 27, 2021) (denying summary judgment on excessive force claim based on a lack of personal involvement where there was "a genuine issue of material fact as to whether Officer Delaney was present during or participated in the alleged unlawful conduct").

Accordingly, the motions for summary judgment are granted as to Defendants Ketchum and Stewarts' lack of personal involvement, and the two claims asserted against them are dismissed.

II.  <u>Excessive Force and Failure to Intervene</u>

Summary judgment is warranted as to all Defendants in any event, because Plaintiff's claims for excessive force and failure to intervene fail as a matter of law. Plaintiff's first claim, excessive force, is analyzed under the reasonableness standard of the Fourth Amendment. *See Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019); *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015); *McDonald v. City of Troy*, No. 18-CV-01327, 2021 WL 2232565, at *4 (N.D.N.Y. June 3, 2021) (explaining that "[t]he Fourth Amendment protects a free citizen from

---

[8] Defendants also argue with respect to Defendant Maas that he cannot be found liable for failure to intervene because (i) he did not have sufficient time to intervene in the placement of Plaintiff on the car and (ii) he did intervene in the handcuffing by reporting Plaintiff's complaint that the handcuffs were too tight. (Def. Br. at 11-12). The Court declines to grant summary judgment on this basis because a factual issue exists as to what Defendant Maas's role was during the arrest. (*Compare* Ferrand Tr. at 68:18-22, *with* Maas Tr. at 50:20-51:14).

excessive force in the course of an arrest"). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Conor*, 490 U.S. 386, 397 (1989)). Analyzing whether a particular use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Calixto v. City of New York*, 778 F. App'x 59, 59-60 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

As to the second claim, failure to intervene, "[f]urther, a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *Pateman v. City of White Plains*, No. 17-CV-06156, 2020 WL 1497054, at *13 (S.D.N.Y. Mar. 25, 2020) (quoting *Harris v. City of Newburgh*, No. 16-CV-02731, 2017 WL 4334141, at *9 (S.D.N.Y. Sept. 27, 2017)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id*. (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

There are two different applications of force that Plaintiff contends were excessive during his arrest: (1) being put against the car; and (2) the use of handcuffs. (*See* Am. Compl. at 5-6). The Court considers each use of force separately.

a. <u>First Use of Force: Being Put Against the Car</u>

Plaintiff alleges that after he was removed from his vehicle he was "slammed so hard on the car by several officers breaking [his] bigger ribs on [his] right side." (*Id.* at 5). Defendants argue that this use of force was objectively reasonable, there is no evidence of a rib injury, and there is no evidence of Defendants' malice or intent to harm Plaintiff. (Def. Br. at 17-21).

Generally, when assessing whether a particular use of force was reasonable, "courts must look to the totality of the circumstances relating to the conduct of law enforcement officers, including the manner in which the plaintiff's alleged injuries were inflicted during the arrest." *Kayo v. Mertz*, No. 19-CV-00365, 2021 WL 1226869, at *14 (S.D.N.Y. Mar. 31, 2021); *see also Gutierrez v. New York*, No. 18-CV-03621, 2021 WL 681238, at *14 (E.D.N.Y. Feb. 22, 2021) (noting that evaluating the use of force "is fact-specific and requires balancing of various factors"). This evaluation is "guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). "That multi-factor test is not meant to be applied rigidly, however, and the inquiry into whether force is reasonable requires an objective examination of the totality of the circumstances." *Gersbacher v. City of New York*, No. 14-CV-07600, 2017 WL 4402538, at *9 (S.D.N.Y. Oct. 2, 2017).

The Court finds that the force used against Plaintiff in putting him against the car was objectively reasonable under the circumstances. It is undisputed that Plaintiff failed to stop his vehicle after seeing a Sheriff's vehicle activate emergency lights behind him and that a multi-car police pursuit ensued, during which Plaintiff committed several traffic violations and collided with three law enforcement vehicles. (56.1 ¶¶ 5-6, 8, 12, 21, 33). It is further undisputed that law

enforcement had reason to believe that Plaintiff was impaired or under the influence at the time of his arrest. (56.1 ¶ 2; Joint Decl., Ex. O). Moreover, while the record reflects that Plaintiff was not actively resisting arrest, officers at the scene testified that Plaintiff appeared to be under the influence of some narcotic and was not listening to their commands, including Defendant Farrand's order to exit the vehicle. (Pl. Tr. at 119:23-25; Maas Tr. at 48:17-25, 52:4-15; Farrand Tr. at 68:3-5; Skow Tr. at 49:14-19). Thus, it was reasonable for the officers to consider Plaintiff a potential threat to their safety or a flight risk. Accordingly, considering the totality of the circumstances, no reasonable factfinder could conclude that the officers' conduct in putting Plaintiff against the car so that he could be handcuffed and patted down was objectively unreasonable. *See Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 20 (E.D.N.Y. 2013) ("Physical force is often necessary when effectuating arrests.").

Regardless, "summary judgment is proper where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening." *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (quoting *Henry v. Officer Pierce*, 11-CV-00845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017)). Plaintiff alleges that during the arrest his right ribs were "broken," that those ribs now cause him "constant pain," and that they "can be seen poking through [his] skin." (Am. Compl. at 5). Plaintiff further testified that his "rib cage was shattered." (Pl. Tr. at 37:17-19, 85:17-86:3). Plaintiff's description of his injury, however, is contradicted by medical records. EMS records show that Plaintiff complained of rib pain on the day of the arrest but refused medical treatment. (Joint Decl., Ex. K at 6). An x-ray conducted of Plaintiff's right ribs fifteen days after the arrest concluded that "[t]here is no fracture seen" (Joint Decl., Ex. I) and an x-ray conducted approximately one year later found "no evidence of right rib fracture" (Joint Decl., Ex. K). "While,

in certain instances, a plaintiff may exclusively rely on [his] own testimony . . . [a]bsent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment." *Rolkiewicz*, 442 F. Supp. 3d at 642-43 (quoting *Campbell v. Hanson*, No. 17-CV-01024, 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019)). Given that Plaintiff's testimony about his ribs being broken is contradicted by his medical records, "his word alone is not enough to create a *genuine* dispute of material fact." *Id*. Accordingly, Plaintiff's claim for excessive force based on him being put against the car fails as a matter of law.

There being no excessive force claim, the failure to intervene claim likewise fails. *See Thomas v. Morley*, No. 20-CV-07520, 2022 WL 394384, at *10 (S.D.N.Y. Feb. 9, 2022).

b. Second Use of Force: Handcuffing

Plaintiff alleges that the handcuffs were "intentionally squeezed on as hard as they could" and resulted in permanent damage to his right hand. (Am. Compl. at 5-6). Defendants argue that Plaintiff's injury was *de minimis*. (Def. Br. at 13-17).

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs v. Cantwell*, No. 10-CV-01663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). "This particularized standard reflects the need to balance the 'right to use some degree of physical coercion,' including the use of handcuffs 'tight enough to prevent the arrestee's hands from slipping out,' . . . with the use of 'overly tight handcuffing' that could constitute excessive force." *Pateman*, 2020 WL 1497054, at *16. The Court evaluates three specific factors: "(1) [whether] the handcuffs were unreasonably tight; (2) [whether] the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Id*. (citing *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013)). "The injury requirement is particularly important. In fact, [t]here is a consensus among courts in this circuit

that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Rolkiewicz*, 442 F. Supp. 3d at 638; *see also Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 74 (E.D.N.Y. 2015) (recognizing that the injury consideration "is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out"). In order to be actionable, the injuries must be more than *de minimis*. *See Morgan v. City of New York*, No. 17-CV-06454, 2021 WL 2207002, at *5 (E.D.N.Y. Mar. 25, 2021).

First, it is undisputed that Plaintiff complained that the handcuffs were unreasonably tight. (56.1 ¶ 49). It is further undisputed that Defendant Skow responded to Plaintiff's complaint by readjusting Plaintiff's handcuffs (Skow Tr. at 52:3-53:5, 55:8-10), although Defendant Skow maintains that the handcuffs were initially applied appropriately and did not need to be loosened (Skow Tr. at 55:6-10); and Plaintiff testified that the adjustment made him feel worse (Pl. Tr. at 30:16-21, 67:14-24). The third factor tips the balance in Defendants favor because Plaintiff's claimed injury to his right hand is unsupported by any evidence in the record. Plaintiff alleges that he has "permanent feeling loss in [his] hand," "[he] can no longer make a complete fist," and "[he] was told . . . [he] will never be able to make a complete fist again." (Am. Compl. at 5). Plaintiff testified at his deposition that he has made progress on the injury to his hand since the arrest but that even after doing daily hand exercises, he cannot make a complete fist. (Pl. Tr. at 15:15-25, 55:2-8). Plaintiff also testified that at some unspecified time "not too long" after the arrest, he was seen at an urgent care and then went to some type of outpatient physical therapy "a few times." (Pl. Tr. at 70:20-72:13). But Plaintiff, in failing to oppose the instant motion, offers no evidence to corroborate these statements.

The medical records proffered by Defendants undercut Plaintiff's claimed injury. First, Plaintiff did not complain to or seek treatment from EMS regarding pain in his right hand on the day of the arrest. (Joint Decl., Ex. J at 6); *see Morocho v. New York City*, No. 13-CV-04585, 2015 WL 4619517, at *8 (S.D.N.Y. July 31, 2015) ("A court may also consider whether the plaintiff sought emergency medical treatment right after a handcuffing incident."). Further, the electromyography test conducted on Plaintiff's right wrist more than five months after the arrest found "no evidence of widespread motor neuronopathy; active right cervical radiculopathy or right radial neuropathy." (Joint Decl., Ex. L at 13). These findings contradict Plaintiff's statements that he has permanent nerve damage to such a degree that he cannot make a complete fist to this day. *See Faruki v. City of New York*, No. 10-CV-09614, 2012 WL 1085533, at *7 (S.D.N.Y. Mar. 30, 2012) (granting summary judgment on excessive force claim where medical evidence did not corroborate plaintiff's allegation that she suffered a hairline fracture and nerve injuries in her wrist and hand), *aff'd*, 517 F. App'x 1 (2d Cir. 2013); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005) (granting summary judgment where plaintiff testified to diminished use of her left wrist but X-ray results contradicted her claim). Even if the electromyography test's finding of "mild right median neuropathy at the wrist (carpal tunnel syndrome)" in Plaintiff's right hand was sufficient to establish nerve damage (Joint Decl., Ex. L at 13), there is no evidence that this condition did not exist prior to the arrest and was caused by the handcuffing. *Cf. Pateman*, 2020 WL 1497054, at *18 (denying summary judgment where plaintiff's medical records and physician's testimony suggest that he did not have neurologic symptoms in his hands before his arrest and the handcuffing may have caused carpal tunnel syndrome and progressive numbness in Plaintiff's wrists). In fact, Defendants submitted medical records demonstrating that Plaintiff was referred to a hand surgeon for a prior injury to his right hand nearly eight years prior to the arrest.

(Joint Decl., Ex. K at 6). Plaintiff explained at his deposition that he did not follow the recommended treatment for that prior injury, such as attending physical therapy or having a tendon put back in. (Pl. Tr. at 17:7-18:13).

Plaintiff's allegations of nerve damage are, therefore, not supported by any admissible evidence. "Unsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing." *Esmont*, 371 F. Supp. 2d at 215 (E.D.N.Y. 2005); *see also Tyk v. Surat*, No. 13-CV-01532, 2015 WL 13215022, at *4 (E.D.N.Y. Oct. 21, 2015) (granting summary judgment on excessive force claim where plaintiff had no admissible evidence that he was diagnosed with bilateral radial nerve damage), *aff'd sub nom.*, 675 F. App'x 40 (2d Cir. 2017); *see also Rolkiewicz*, 442 F. Supp. 3d at 641 (granting summary judgment as to excessive force claim where "[Plaintiff's] failure to provide any evidence, even solid testimonial evidence that he sustained injuries as a result of handcuffing, is fatal to his claim."). Plaintiff's claimed injury is *de minimis* and, accordingly, insufficient to sustain a claim for excessive force concerning the use of handcuffs.

Likewise, the Plaintiff's second claim for failure to intervene must be dismissed. *See Thomas*, 2022 WL 394384, at *10.

In light of the foregoing, Plaintiff's claim for excessive force based on both theories must be dismissed. Even while granting Plaintiff—who filed nothing in opposition to this motion— every benefit of the doubt to which a *pro se* litigant is entitled, there is no genuine dispute that the force used against him was objectively reasonable or resulted in a *de minimis* injury. As every theory of excessive force has been dismissed, Defendants are, accordingly, granted summary judgment on this claim for relief as well as his claim for failure to intervene in the use of excessive force. *See Reynolds v. City of New York*, No. 04-CV-06540, 2005 WL 2861601, at *4 (S.D.N.Y.

Oct. 31, 2005) ("[L]aw enforcement officers' affirmative duty to intervene exists only where a person's constitutional rights have been violated.").[9]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' unopposed motions for summary judgment are GRANTED.

The Clerk of Court is respectfully requested to (i) terminate the pending motion sequences (Docs. 106-109); (ii) mail a copy of this Opinion and Order to Plaintiff; and (iii) close this case.

SO ORDERED.

Dated:  White Plains, New York
        December 23, 2024

_____
Philip M. Halpern
United States District Judge

---

[9] Given the conclusions reached herein, the Court need not and does not reach Defendants' arguments regarding qualified immunity. (Def. Br. at 21-24).